UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **AGAPE BROADCASTERS INC.** | **CASE NO. 6:19-CV-01099** |
| **VERSUS** | **JUDGE SUMMERHAYS** |
| **ESTATE OF MARCUS TODD SAMPSON** through its administratrix, Valerie Matix, **MACKEM AVIATION, LLC (d/b/a Space Aviators), DAVID L. NORMAN, UNIDENTIFIED AIRCRAFT MAINTENANCE COMPANY, GARMIN INTERNATIONAL, INC., and TRI-STAR AVIATION, INC.** | **MAGISTRATE JUDGE WHITEHURST** |

## MEMORANDUM RULING

The present matter before the court is a Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure filed by defendant Garmin International, Inc. [ECF No. 17]. Garmin allegedly manufactured and sold the GPS unit installed on an aircraft that collided with a radio tower owned and operated by the plaintiff. Garmin's motion asserts that the Court lacks specific and general personal jurisdiction over Garmin and, accordingly, that the claims against Garmin should be dismissed. As explained below, the Court **GRANTS** Garmin's Motion to Dismiss for Lack of Personal Jurisdiction.

### I.
### BACKGROUND

Plaintiff Agape Broadcasters, Inc. owns and operates a Christian radio station broadcasting to Southwest Louisiana and East Texas as KAJN Radio. (Complaint [ECF No. 1] at ¶ 2.1). KAJN's broadcasts out of a studio in Crowley, Louisiana and transmitted its signal through the 1,800-foot-high TV 3 Tall Tower located in Kaplan, Louisiana. (*Id.* at ¶ 2.3). On August 31,

2018, a Piper aircraft model PA-28R piloted by Marcus Todd Sampson collided with the TV 3 Tall Tower. (*Id.* at ¶ 2.4). Sampson and his daughter were killed in the collision. (*Id.*). KAJN's Broadcasting tower, microwave dish, and transmission line were destroyed in the collision. (*Id.* at ¶ 2.5). Agape alleges that, prior to the destruction of its broadcast tower, KAJN's signal reached nearly 1.5 million people in the area bordered by Lake Charles, Alexandria, Lafayette, and Baton Rouge. (*Id.* at ¶ 2.6). After the destruction of its antenna, KAJN's broadcast area was limited to just Crowley, Jennings, Eunice, and Opelousas, with limited coverage in Lafayette. (*Id.*). At the time Agape commenced the present suit, KAJN had not obtained a replacement tower and facility with the same coverage as the TV 3 Tall Tower destroyed in the collision.

Agape commenced this action against Sampson's estate through its administratrix Valerie Matix, David L. Norman (the owner of the airplane), Mackem Aviation, LLC d/b/a Space City Aviators (the flying club that arranged Sampson's use of the aircraft), an "unidentified aircraft maintenance company" allegedly employed to perform maintenance work on the aircraft, Garmin, and Tri-Star Aviation, Inc. (*Id.* at ¶¶ 3.2, 3.3, 3.5, 3.7, 3.9, 3.12). With respect to Garmin, Agape alleges that the aircraft was equipped with a Garmin model 530 GPS unit manufactured and sold by Garmin. (*Id.* at ¶ 3.9). Agape alleges that this unit "contains an obstacle avoidance system which, if functioning properly, is designed to alert the aircraft pilot using it to potential obstacles in his or her flight path." (*Id.*). According to Agape, the Garmin GPS unit installed in the aircraft malfunctioned and failed to alert Sampson that the TV 3 Tall Tower was in his flight path. (*Id.* at ¶ 3.10). Agape alleges that the failure of the Garmin GPS unit was a violation of the Louisiana Products Liability Act. (*Id.* at ¶ 3.11). Specifically, Agape contends that the unit was "unreasonably dangerous in construction or composition," and was "unreasonably dangerous in failing to conform to express warranty made by the manufacturer about the product." (*Id.*).

Garmin then filed the present Motion to Dismiss for Lack of Personal Jurisdiction. Garmin contends that it is a Kansas corporation with its principal place of business in Olathe, Kansas. (Affidavit of Anthony Hancox, Ex. A to Garmin's Motion to Dismiss, [ECF No. 17-2] at ¶).

## II.
### RELEVANT LEGAL STANDARDS

Where, as here, jurisdiction is grounded on diversity jurisdiction under 28 U.S.C § 1332, a federal court may exercise personal jurisdiction over a non-resident defendant if the forum state's long-arm statute confers personal jurisdiction over that non-resident defendant and if the exercise of personal jurisdiction satisfies the requirements of due process under the United States Constitution. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom et al*, 481 F.3d 309, 311 (5th Cir. 2007)). The reach of the Louisiana Long-Arm Statute is co-extensive with the limits of due process under the Constitution. *Petroleum Helicopters, Inc. v. Avco Corp. et al.*, 513 So. 2d 1188, 1192 (La. 1987). As a result, the jurisdictional analysis under the Louisiana Long-Arm Statute collapses into a single inquiry of whether the exercise of personal jurisdiction comports with due process. *Id.*; *see also In re Chinese-Manufactured Drywall Products Liability Litig.*, 753 F.3d 521, 546 (5th Cir. 2014). Where the court decides a motion to dismiss for lack of personal jurisdiction without a hearing, the plaintiff need only demonstrate a prima facie basis for personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Johnston v. Multidata Systems, Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

A plaintiff can demonstrate a prima facie basis for personal jurisdiction through the allegations contained in the complaint. However, if the defendant disputes the factual grounds for personal jurisdiction, the district court may consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of

discovery." *Quick Technologies, Inc. v. Sage Group PLC,* 313 F.3d 338, 344 (5th Cir. 2002). In judging whether a plaintiff has met his or her prima facie burden, a court must construe all uncontroverted allegations in the plaintiff's complaint as true. *Johnson,* 523 F.3d at 609. If the defendant controverts factual allegations in the complaint with affidavits or other evidence, the plaintiff cannot rest solely on the controverted allegations in the complaint but must counter the defendant's evidence with affidavits or other evidence. *Conoco Phillips Co. v. Jump Oil Co.,* 948 F. Supp. 2d 1272, 1276 (N.D. Okla. 2013). Disputes in the parties' evidence must be resolved in the plaintiff's favor. *Johnson,* 523 F.3d at 609; *Kelly Law Firm, P.C. v. AN Attorney for You,* 679 F Supp. 2d 755, 762 (S.D. Tex. 2009). Personal jurisdiction can be based on either "general jurisdiction" or "specific jurisdiction." *Haliburton Energy Services, Inc. v. Ironshore Specialty Ins. Co.,* 921 F.3d 522, 539 (5th Cir. 2019).

### III.
### ANALYSIS

**A. Specific Jurisdiction**

A court may exercise specific jurisdiction over a defendant if the plaintiff's claims "arise out of" or are "related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984). The Fifth Circuit follows a three-step inquiry in determining whether specific jurisdiction exists. First, a court must determine whether a defendant has "minimum contacts" with the forum state. *Nuovo Pignone, S.p.A v. STORMAN ASIA M/V,* 310 F.3d 374, 378 (5th Cir. 2002). In assessing a defendant's minimum contacts, courts look to whether the defendant "purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Id.* Second, a court must determine whether a plaintiff's claims arise out of or result from the defendant's forum-

related contacts. *Id.* Third, the court must determine "whether the exercise of personal jurisdiction is fair and reasonable." *Id.*

The parties' arguments on specific jurisdiction focus on the second requirement for specific jurisdiction: that Garmin's "suit-related conduct must create a substantial connection with the forum State." *Best Little Promo House in Texas, LLC v. Yankee Pennysaver, Inc.,* No. 14-cv-1824, 2014 WL 5431630 at *4 (N.D. Tex. Oct. 27, 2014). In other words, Garmin's contacts with Louisiana must be the contacts that give rise to Agape's causes of action. *See Bristol-Myers Squibb Co. v. Superior Court of California,* ___ U.S. ___, 137 S. Ct. 1773, 1781 (2017). Garmin contents that Agape has not alleged any facts showing a connection between Garmin's suit-related contacts and Louisiana. (Garmin's Rule 12(b)(2) Motion to Dismiss [ECF No. 17] at 5). According to Garmin, the suit-related conduct at issue is the sale of a defective Garmin GPS unit installed in an airplane that collided with Agape's tower when the GPS unit allegedly malfunctioned. (*Id.*) However, Garmin points out that plaintiff has not alleged that the GPS unit that malfunctioned and allegedly contributed to the collision was sold in Louisiana or installed on an aircraft in Louisiana. According to Garmin, "the fact that the incident occurred in Louisiana, and that the Garmin GPS unit was allegedly onboard the aircraft at the time, does not give rise to specific jurisdiction over Garmin in [Louisiana]." (*Id.*) (citing *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-2047, 2017 WL 5971622 (E.D. La. Nov. 30, 2017)).

Plaintiff, on the other hand, relies primarily on the "stream of commerce" doctrine of specific jurisdiction. According to plaintiff, "Garmin has acknowledged it sells its products, including the model aircraft GPS unit at issue here, in forty-nine states across America" and Garmin "clearly expected that the aircraft GPS unit at issue here could be purchased and used by consumers in Louisiana." (Plaintiff's Memorandum in Response to Motion to Dismiss [ECF No.

5

23] at 5). Plaintiff further argues that it is "entirely foreseeable and not unreasonable to expect that aircraft GPS units like the one at issue here will be used in aircrafts that cross state lines which mark the boundaries of different legal fora." (*Id.*) Plaintiff argues that Garmin placed the allegedly defective GPS unit at issue into the stream of commerce, that Garmin sells similar units in Louisiana, and that these facts form a sufficient basis to exercise personal jurisdiction over Garmin in Louisiana.

Considering the record as a whole, plaintiff has not shown that the aircraft accident at issue here arose out of Garmin's suit-related contacts with Louisiana. There are no allegations or evidence that the GPS unit was sold or installed on an aircraft in Louisiana. Nor is there evidence that the aircraft using the allegedly defected GPS unit was based in Louisiana. Indeed, the record suggests that the aircraft at issue was based in Texas and flown into the Louisiana by the pilot of that aircraft.[1] The fact that the aircraft was flown into Louisiana with the Garmin GPS unit that allegedly malfunctioned is not a sufficient basis for the exercise of personal jurisdiction. The "unilateral activity of another party or third person" other than the defendant cannot be a basis for personal jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Nor can the fact that Garmin does business in Louisiana and has sold other GPS units in Louisiana serve as a basis for personal jurisdiction because there is no connection between these Louisiana sales and the unit that allegedly malfunctioned. *See, e.g., Bristol-Myers Squibb Co.*, 137 S.Ct. at 781 ("When there is no such connection [i.e. between the defendant's contacts with the form and the cause of action],

---

[1] As Garmin states in its Reply Brief:

> Specifically, Agape has alleged that Mr. Sampson was piloting the aircraft, the home base of which was in La Porte, TX, pursuant to his membership in a flying club based in League City, Texas. The aircraft was in Louisiana airspace on the date of the incident only because Mr. Sampson had piloted it there.

(Garmin's Reply Brief [ECF No. 34] at 3) (Citing Agape's Complaint [ECF No. 1] at ¶¶2.4, 3.3, 3.7) (citations omitted).

specific jurisdiction is lacking regardless of the extent of a defendant's *unconnected* activities in the state.") (emphasis added).

Turning to Agape's stream-of-commerce argument, this doctrine permits personal jurisdiction over a non-resident defendant who "delivers … products into the stream-of-commerce with the expectation that they will be purchased by consumers in the forum State." *World-wide Volkswagen Corp. v Woodson*, 444 U.S. 286, 298 (1980). Under Fifth Circuit precedent, a plaintiff need not show that the defendant actively targeted the forum state. *See Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 178 (5th Cir. 2013).[2] However, the product that caused the plaintiff's injury must be in the "stream of commerce" when it arrives in the forum for the doctrine to apply. *Ainsworth*, 716 F.3d at 177 (under the stream-of-commerce approach "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum State ***while still in the stream-of-commerce***…") *Id.* (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)) Accordingly, "[o]nce a product has reached the end of the stream and is purchased, a consumer's unilateral decision to take a produce to a distant state, without more, is insufficient to confer personal-jurisdiction over the manufacturer or distributor" *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 273 (5th Circuit 2006).

Here, there are no allegations or evidence in the record that the Garmin GPS unit involved in the collision in this case was still in the the stream-of-commerce at the time the plane carrying that unit collided with Agape's tower in Louisiana. Rather, the record suggests that the GPS unit

---

[2] In *Ainsworth*, the Circuit addressed the uncertainty over the Supreme Court's plurality opinion in *J. McIntyre Machinery, Ltd. v. Nicastro*, ___ U.S. ___, 131 S.Ct. 2780 (2011). In an opinion authored by Justice Kennedy, the plurality suggested that the stream-of-commerce theory required a showing that the defendant targeted the forum state. In *Ainsworth*, the Fifth Circuit concluded that the plurality's stricter standard was not controlling because a concurring opinion by Justice Breyer furnished the narrowest grounds for decision and did not adopt a requirement that the defendant target the forum. 716 F.3d at 178-79.

was sold outside Louisiana and brought into the state through the unilateral actions of the plane's pilot, not Garmin.[3] *Ainsworth*, 716 F.3d at 177 (even under the stream-of-commerce doctrine, the defendant's contacts with the forum must be "more than 'random, or fortuities, or attenuated, or of the unilateral activity of another party or third person.'") (quoting *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012)). Because the record does not show that the GPS unit at issue was still in the stream of commerce when it entered Louisiana, Agape cannot rely on this doctrine to support personal jurisdiction over Garmin in Louisiana. *See Seiferth*, 472 F.3d at 273.

Even if this fact did not bar Agape's reliance on the stream-of-commerce doctrine, the record does not support the other aspects of the doctrine. Specifically, in assessing foreseeability under the stream-of-commerce doctrine, courts also consider (1) whether "the quantity of defendant's actual or attempted sales (advertising or marketing) is high enough that the defendant can reasonably anticipate being haled into the forum state," or (2) "the defendant has specific knowledge or expectation that its specific injury-causing product is being sold in the forum state." *Boat Serv. of Galveston, Inc. v. NRE Power Sys., Inc.*, 429 F. Supp. 3d 261, 269 (E.D. La. 2019). Garmin concedes in an affidavit attached to its motion only that "Garmin products are available for purchase in Louisiana just as they are in all 49 other states and internationally." (Affidavit of Anthony Hancox [ECF No. 17-2] at ¶ 8). However, there are no other allegations or evidence showing the extent of Garmin's sales or business activities in Louisiana. Nor, critically, does the record reflect the extent of sales of the Garmin aircraft GPS model at issue in this case – or any Garmin aircraft GPS model – in Louisiana. In sum, the record does not provide a prima facie basis for the exercise of personal jurisdiction under a stream-of-commerce theory.

---

[3] (Garmin's Reply Brief at 3) (Citing Agape's Complaint [ECF No. 1] at ¶¶2.4, 3.3, 3.7).

## B. General Jurisdiction

A court can exercise "general jurisdiction" over a defendant only when that defendant's party's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state." *Daimler A.G. v. Bauman*, 571 U.S. 117, 134 (2014) (emphasis added). Based on this standard, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business" of the defendant. *Id.*; *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citing *Daimler A.G.*, 571 U.S. 117, 134). Put another way, it would be an "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation" subject to general jurisdiction "in that state." *Daimler A.G.*, 134 S. Ct. at 761 n.19.

In the present case, Garmin is not incorporated in Louisiana nor does it have its principal place of business in the Louisiana. (Hancox Affidavit at ¶ 3). Garmin also "does not physically design, engineer, manufacture, assemble, test, repair, or provide any post-sale support in Louisiana for any of its products." (*Id.* at ¶ 4). Garmin also shows that it does not own any property in Louisiana, nor does it maintain any employees or offices in Louisiana. (*Id.* at ¶¶ 5, 7). In sum, the record does not reveal an "exceptional case" justifying the exercise of general personal jurisdiction over Garmin.

## C. Jurisdictional Discovery.

Plaintiff initially requested leave to conduct jurisdictional discovery. "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.2000)

(citation omitted). To obtain jurisdictional discovery, a plaintiff must "specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 672 (S.D. Tex. 2014). The parties here, however, subsequently informed the Court that they are no longer requesting jurisdictional discovery and are resting on the current record as far as the question of personal jurisdiction over Garmin. Accordingly, the Court will not address the request for jurisdictional discovery as that request has been withdrawn.

## IV.
### CONCLUSION

For the foregoing reasons, the court **GRANTS** Garmin's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure [ECF No. 17]. Accordingly, the Court orders that the claims against Garmin be **DISMISSED** without prejudice.

**THUS DONE** and signed in Lafayette, Louisiana on this 28th day of September, 2020

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE